UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS AND EMPLOYERS KANSAS AND MISSOURI HEALTH AND WELFARE FUND and its Trustees: MARTIN ROSAS, ALFONSO FIGUEROA, RONALD GIANGRECO, and JON MCCORMICK,    2010 N. W. 150th Avenue, Suite 100,    Pembroke Pines, Florida 33028<br><br>and<br><br>UNITED FOOD AND COMMERCIAL WORKERS DISTRICT UNION LOCAL TWO AND EMPLOYERS PENSION FUND and its Trustees: MARTIN ROSAS, ALFONSO FIGUEROA, RONALD GIANGRECO, and JON MCCORMICK,    2010 N. W. 150th Avenue, Suite 100,    Pembroke Pines, Florida 33028<br><br>          Plaintiffs,<br>v.<br><br>COSENTINO ENTERPRISES, INC. d/b/a COSENTINO'S FOOD STORES    3901 W 83rd St.    Prairie Village, KS 66208-5308<br><br>and<br><br>COSENTINO GROUP, INC. d/b/a COSENTINO'S FOOD STORES    3901 W 83rd St.    Prairie Village, KS 66208-5308<br><br>Serve: National Registered Agents, Inc.    20 South Central Avenue    Clayton, MO 63105<br><br>          Defendants. | Case No._____ |

**COMPLAINT**

Plaintiffs, the United Food and Commercial Workers and Employers Kansas And Missouri Health and Welfare Fund (the "Health Fund") and the United Food and Commercial Workers District Union Local Two and Employers Pension Fund (the "Pension Fund" and together, with the Health Fund, the "Funds") and the Funds' respective Trustees, by counsel, hereby complain of Cosentino Enterprises, Inc. ("Cosentino Enterprises") and Cosentino Group, Inc. ("Cosentino Group") (collectively, the "Defendants") as follows:

## Introduction

1. This action is brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq.*, and the Labor Management Relations Act of 1948 ("LMRA"), 29 U.S.C. § 185. Plaintiffs seek a money judgment against Defendants awarding delinquent contributions, accrued interest, liquidated damages, payroll audit fees, and attorneys' fees and costs now due and hereafter due, through the date of judgment, owed by Cosentino Enterprises and/or Cosentino Group, pursuant to ERISA Sections 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145, Defendants' collective bargaining agreements, and the Trust Documents governing the Funds.

## Jurisdiction and Venue

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because Defendants are incorporated in this district, Defendants reside in this district, Defendants operate grocery stores in this district and Defendants' breach of Section 305(e)(3)(C)(iv) and 515 of ERISA, 29 U.S.C. §§ 1085(e)(3)(C)(iv) and 1145 occurred within this district.

4. Personal jurisdiction exists over Defendants pursuant to ERISA Section 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), which provides that an action may be filed in the district where the breach took place and process may be served in a district where a defendant resides or may be found.

**Parties**

5. The Health Fund is a joint labor-management health and welfare fund established pursuant to Section 302(c) of the LMRA, 29 U.S.C. § 186(c).

6. The Pension Fund is a joint labor-management pension fund established pursuant to Section 302(c) of the LMRA, 29 U.S.C. § 186(c)

7. The Health Fund is a multiemployer benefit plan within the meaning of Sections 3(3), 3(37), 29 U.S.C. §§ 1002(3), 1002(37), and 1301(a)(3).

8. The Pension Fund is a multiemployer benefit plan within the meaning of Sections 3(3), 3(37), 29 U.S.C. §§ 1002(3), 1002(37), and 1301(a)(3)

9. Plaintiffs Martin Rosas, Alfonso Figueroa, Ronald Giangreco, and Jon McCormick are Trustees of the Funds and "fiduciaries" with respect to the Funds as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are members of the Funds' Boards of Trustees, which are the "plan sponsor" within the meaning of Section 4001(a)(10)(A) of ERISA, 29 U.S.C. § 1301(a)(10)(A). The Funds are administered in Pembroke Pines, Florida.

10. At all times relevant to this action, Defendants have been employers within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and have been engaged in an industry affecting commerce, within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. § 1002(11) and (12).

KC 18716763.1

11. At all times relevant to this action, Defendants employed employees represented for the purposes of collective bargaining by the United Food and Commercial Workers Local Union No. 2 ("Local 2"), a labor organization representing employees in an industry affecting interstate commerce.

12. Defendants agreed to the terms of collective bargaining agreements with Local 2 ("CBAs"). One CBA names the parties as Local 2 and "Cosentino's Food Stores" and covers employees engaged in various meat cutter and meat sales services at the following stores: Blue Springs North Price Chopper, Blue Springs South Price Chopper, Brookside Sun Fresh, Price Chopper, Price Chopper, Cosentino's Apple Market, and The Pleasant Hill Price Chopper ("Meat Cutter CBA"). The Meat Cutter CBA was effective from March 22, 2015 through March 24, 2018. Another CBA names the parties as Local 2 and "Cosentino / Price Chopper" and covers employees working in the delicatessen operations at the Blue Springs South and Northeast Price Choppers, and all employees working at Brywood Price Chopper and Pleasant Hill Price Chopper ("Price Chopper CBA"). The Price Chopper CBA was effective from March 6, 2017 through March 7, 2020. The third CBA names the parties as Local 2 and "Cosentino's Food Stores" and covers employees engaged in various meat cutter and meat sales services at a Price Chopper store located in Smithville, Missouri ("Smithville CBA"). The Smithville CBA was effective from March 27, 2016 through March 24, 2019.

13. Upon information and belief, Cosentino Enterprises operates grocery stores covered by the Meat Cutter CBA, the Price Chopper CBA and the Smithville CBA and Cosentino Group operates grocery stores covered by the Meat Cutter CBA and the Price Chopper CBA.

14. Upon information and belief, Defendants are corporations organized under the laws of the State of Missouri and both have the same principal place of business in Prairie Village,

KC 18716763.1

Kansas. Defendants own and operate grocery stores in Kansas and Missouri, including stores under the "Price Chopper" name brand.

## Governing Documents

### The Collective Bargaining Agreement

15. The CBAs obligate Defendants to make monthly contributions to the Funds. Pursuant to the terms of the CBAs, the contribution payments are due to the Funds no later than the 10th day of the month following the month in which the contribution obligation is incurred and are delinquent if received thereafter.

16. The CBAs also require Defendants to be bound by the terms of the Trust Agreements creating the Plan, as amended, and all of the rules and regulations heretofore and hereafter adopted by the Trustees of the Funds, and all of the actions taken by the Trustees in administering the Plans and Funds.

17. The CBAs set forth hourly contribution rates Defendants are required to pay to the Funds on behalf of each employee covered by the CBAs for each hour worked. The CBAs also provide for annual increases to the Health Fund contribution rates.

### The Trust Agreements and Delinquency Procedures

18. Pursuant to the Trustees' authority under the Trust Agreements to establish rules for the collection of delinquent contributions, the Trustees adopted individual Delinquency Procedures for each of the Funds (collectively the "Delinquency Procedures").

19. The Delinquency Procedures require Defendants to submit monthly remittance reports and pension contributions to the Funds, establishes the Funds' interest rate on delinquent contributions, provides for the Funds to charge interest on late-paid contributions, and calls for the

Funds to collect attorneys' fees, costs, and liquidated damages related to collecting a delinquency. The Delinquency Procedures also require employers to submit to regular payroll audits.

20. The Trust Agreements for the Pension Fund and Health Fund, both as amended through March 23, 2021, require contributing employers, including Defendants, to submit to periodic payroll audits by the Funds to determine the accuracy of the contributions upon which benefits are paid to covered employees. The Trust Agreements also provide the Trustees with the authority to impose all or a portion of the costs of the audit upon a delinquent employer.

**Factual Allegations**

21. Monthly contributions due to the Funds are calculated on remittance reports required to be prepared monthly by each contributing employer. The remittance reports identify the employees, their hours worked, and their job classification and corresponding contributions due under the CBAs. This is a self-reporting system and the Funds rely on the honesty and accuracy of the employers in reporting employees' hours and job classifications, as well as the contributions owed by employers to the Funds for work performed by employees.

22. In order to verify the accuracy of the remittance reports submitted by employers, the Funds conduct periodic payroll audits pursuant to the amended Trust Agreement and the Delinquency Procedures. Since the benefit accruals of the Funds' participants are directly tied to the contributions reported on their behalf, these payroll audits are critical to ensuring the accuracy and integrity of the Funds' administration of benefits.

23. In accordance with the CBAs, the Trust Agreements, and the Delinquency Procedures of the Funds, on or around April 2020, the Funds' auditors began conducting a payroll audit of Defendants' payroll records to determine whether the appropriate contributions had been paid by Defendants to the Funds for the period of January 2016 through December 2017. The

KC 18716763.1

Funds' auditors performed two payroll audits of contributions owed under the Smithville CBA to each of the Funds ("Smithville Audit"). The Funds' auditors performed an additional two payroll audits of contributions owed under the Meat Cutter CBA and the Price Chopper CBA to each of the Funds ("Non-Smithville Audit").

24. During the course of the Smithville Audit, the Funds' auditor requested access to Defendants' payroll records for the period January 2016 through December 2017 but Defendants failed to produce any payroll records in 2016. Additionally, the payroll records that were provided for 2017 could not be utilized for purposes of the audit because these records did not reflect total hours worked each calendar day. Defendants only provided 2017 daily time records for approximately 24% of applicable employees covered by the Smithville CBA and have refused to provide access to additional records that would enable a complete payroll audit to take place. Accordingly, the Funds' auditor used an extrapolation methodology based on the error rate for the 24% sample group and applied this error rate to the remaining 76% of employees covered by the Smithville CBA.

25. During the course of the Non-Smithville Audit, the Funds' auditor requested access to payroll records for the period January 2016 through December 2017 but Defendants failed to produce any payroll records in 2016. Additionally, the payroll records that were provided for 2017 could not be utilized for purposes of the audit because these records did not reflect total hours worked each calendar day. Defendants only provided 2017 daily time records for approximately 15% of applicable employees covered by the Meat Cutter CBA and Price Chopper CBA and have refused to provide access to additional records that would enable a complete payroll audit to take place. Accordingly, the Funds' auditor used an extrapolation methodology based on the error rate

KC 18716763.1

for the 15% sample group and applied this error rate to the remaining 85% of employees covered by the Meat Cutter CBA and Price Chopper CBA.

26. On June 7, 2021, the Funds sent Defendants final payroll audit reports for the four payroll audits (collectively, the "Final Audit Report"). The Final Audit Report summarized the extrapolation methodology used by the Fund's auditor as a result of Defendants' failure to produce payroll records, including records of total hours worked each calendar day. The Funds' June 7, 2021 letter informed Defendants that they had thirty (30) calendar days to dispute any portion of the deficiency found in the Final Audit Report.

27. On July 6, 2021, Defendants acknowledged receipt of the Final Audit Report and advised they were disputing a number of the findings. Defendants further advised they would respond in full by August 7, 2021.

28. On November 18, 2021, the Funds and Defendants entered into a Tolling Agreement and Suspension of Interest (the "Tolling Agreement") which tolled the statute of limitations for the Funds to recover the delinquent contributions from Defendants. The Tolling Agreement also tolled the accrual of interest on the delinquent contributions identified in the Final Audit Report effective November 18, 2021.

29. On December 10, 2021, Defendants provided a response to the Smithville Audit and contested owing some of the contributions identified in the Smithville Audit. To date, Defendants have not provided a substantive response to the Non-Smithville Audit.

30. The Smithville Audit found Defendants failed to pay $31,996.95 in contributions to the Health Fund and $3,060.53 in contributions to the Pension Fund. The Non-Smithville Audit found Defendants failed to pay $242,265.90 in contributions to the Health Fund and $36,733.15 in contributions to the Pension Fund. The Final Audit Report informed Defendants that they failed

KC 18716763.1

to pay $274,262.85 in total contributions to the Health Fund and $39,793.68 in total contributions to the Pension Fund for work performed by employees covered by the CBAs. To date, Defendants have not paid these amounts to the Funds. Additionally, Defendants owe interest on the delinquent amounts identified in the Final Audit Report in the amount of $71,815.77, which accrued from the dates the underlying contributions were due through November 18, 2021 (the effective date of the Tolling Agreement).

## COUNT ONE: DELINQUENT CONTRIBUTIONS

31. Plaintiffs incorporate the foregoing Paragraphs as if stated herein.

32. Defendants are obligated to pay contributions to the Funds as required by the CBAs, the Trust Agreement, and ERISA Sections 502 and 515, 29 U.S.C. §§ 1132, 1145.

33. As identified in the Final Audit Report, Defendants have failed to pay $274,262.85 in total contributions owed to the Health Fund and $39,793.68 in total contributions owed to the Pension Fund on behalf of employees performing services for the period of January 2016 through December 2017.

34. By failing to pay the required contributions, Defendants have violated Section 515 of ERISA, 29 U.S.C. § 1145, Section 302 of the LMRA, 29 U.S.C. § 186, and the Trust Agreement.

35. Defendants are also liable for the costs of the payroll audit in the amount of $23,484 pursuant to the Trust Agreement.

36. Accordingly, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the LMRA, the Trust Agreement, and the Delinquency Procedures, Defendants are liable to the Funds for $314,056.53 in delinquent contributions, no less than $71,815.77 in interest on the delinquent contributions, accrued from the date the underlying contributions were due through November 18, 2021 at the Funds' interest rate of 2% above the prime rate, $71,815.77 in liquidated damages in

an amount equal to the greater of 20 percent of the delinquent contributions or the interest on the delinquent contributions, the cost of the payroll audit in the amount of $23,484, and reasonable attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts.

## Prayer for Relief

**WHEREFORE**, Plaintiffs request the following relief:

A. Enter judgment against Defendants and in favor of Plaintiffs, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the Trust Agreement, and the Delinquency Procedures, for the following amounts:

(1) $314,056.53 in estimated delinquent contributions;

(2) Interest on the delinquent contributions at the Funds' interest rate of 2% above the prime rate accruing from the date the contributions became due and owing until November 18, 2021 in an amount of no less than $71,815.77;

(3) An amount equal to the greater of the interest on the delinquent contributions or 20 percent of the delinquent contributions, in an amount of at least $71,815.77;

(4) The cost of the payroll audit in the amount of $23,484;

(5) Attorneys' fees and other costs incurred by the Funds in the collection of delinquent contributions, including the attorneys' fees and costs in this action;

B. Retain jurisdiction of this case pending compliance with its Orders; and

C. Grant such other and further relief as the Court may deem just.

Dated: May 3, 2022                    Respectfully submitted,

   /s/ Douglas M. Weems
Douglas M. Weems, MO Bar #41165
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Tele: (816) 474-8100
Fax: (816) 474-6132
dweems@spencerfane.com

Counsel for Plaintiffs

   A copy of this complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, as required by Section 502(h) of ERISA, 29 U.S.C. § 1132(h).